IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE NELLIS, | : | Civil No.  4:24-CV-1849 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of Social Security | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

### I.    <u>Introduction</u>

In many instances, the ability to reach is an essential attribute in the modern workplace. Therefore, individuals whose ability to reach has been significantly eroded by physical impairments often are unable to perform sustained work. For such disabled individuals Social Security provides a crucial financial safety net.

However, before claimants are entitled to disability benefits under the Social Security Act due to issues pertaining to their ability to reach, it must be shown that they meet the stringent requirements prescribed by law and Administrative Law

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

Judges, (ALJs), are charged with the responsibility to carefully assess such claims. Further, it is the responsibility of the ALJ to clearly and thoroughly articulate the basis for the denial of a disability claim based upon reach impairments. Once the ALJ completes this task, on appeal it is the duty of the district court to review these ALJ findings, judging the findings against a deferential standard of review which simply asks whether the ALJ's decision is supported by substantial evidence in the record, see 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012), a quantum of proof which "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).

Yet while this is a deferential substantive standard of review, it is also incumbent upon the ALJ to sufficiently articulate the rationale for the decision to allow for meaningful judicial review. Where this duty of articulation is not fully satisfied, a remand is appropriate.

So it is here.

In the instant case, the ALJ denied a disability application submitted by the plaintiff, Michelle Nellis. Nellis alleged she was disabled by a cascading array of severe physical and emotional impairments including May-Thurner syndrome, deep

2

vein thrombosis (DVT), diabetes, and depression. The record also showed that, in 2023, she was diagnosed with adhesive capsulitis, resulting in pain and decreased range of motion in her right shoulder. The fact of Nellis' decreased range of motion in her right shoulder was described by Nellis at the hearing on her disability claim and consultative examination results showing decreased range of motion in all spheres of reaching also reinforced this limitation. Moreover, the consultative examiner opined that she would be limited to occasionally reaching in any direction and never reaching overhead.

Nonetheless, in denying Nellis' disability claim, the ALJ found that she could perform light work and was limited to only occasional overhead reaching with her right arm but, without explanation, provided no limitations in reaching in any other direction with her right arm. (Tr. 15). This conclusion was curious since the ALJ acknowledged evidence that Nellis had decreased range of motion in all directions, yet the ALJ did not explain why the examination results would only limit her ability to reach overhead. This unexplained limitation was problematic because a vocational expert testified that any limitations in overhead reaching, including never reaching overhead, would not affect Nellis' ability to perform the jobs he identified but that a limitation to occasional reaching in all other directions would be work preclusive at the light exertional level.

Considering the outcome determinative nature of this narrow issue, after a review of the record, we find that the ALJ failed to adequately explain this aspect of the RFC finding, and thus the ALJ's RFC determination is not supported by substantial evidence. Accordingly, we recommend that the Court remand this case for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case

On October 6, 2022, Michelle Nellis filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 1, 2017. (Tr. 10). In her application, Nellis cited a cascading array of severe physical impairments as disabling, including blind or low vision, diabetes, prothrombin mutations, May-Thurner syndrome, DVT left leg from foot to kidney, pre-infarction syndrome, chronic DVT, and depression. (Tr. 61).  Nellis was born on October 2, 1972, and was forty-four years old, which is defined as a younger individual, on the alleged disability onset date. (Id.). She later changed age categories and was considered an individual closely approaching advanced age at the time of her hearing. (Id.) She had prior employment as a retail manager. (Tr. 54).

4

With respect to her physical impairments, the clinical record, medical opinions, and Nellis' testimony confirmed that her ability to reach was compromised by her adhesive capsulitis.[2]

The longitudinal record of her shoulder impairment shows that in May 2023 she presented to the emergency department complaining of right shoulder pain worsening since January 2023. (Tr. 715). She described being in "terrible pain" especially with quick movements. (Id.) The physician explained she had limited range of motion and significant pain and weakness, and an examination showed painful range of motion overhead and above 90 degrees in all planes and that she was unable to reach behind her back because of pain on both the superior and anterior aspect of the shoulder. (Tr. 716). She was prescribed Tylenol #3 and referred to orthopedics and physical therapy (Id.) In May 2023 she was diagnosed with adhesive capsulitis by an orthopedic clinic. (Tr. 768). Physical therapy was recommended and a fluoroscopy guided intra-articular corticosteroid injection was scheduled for June 2023. (Id.) It was noted that her impairment significantly impacted her range of motion. (Id.) She underwent an intra-articular corticosteroid injection in June 2023 which provided her immediate pain relief, (tr. 784), but by April 2024, she returned

---

[2] Because we have determined that the treatment of Nellis' physical limitations, by itself, warrants a remand of this case, we have limited our review of the evidence to these physical impairments which affected her ability to reach overhead.

to orthopedics reporting her shoulder symptoms had recurred the prior month. (Tr. 855). She reported pain lifting her arm away from her body or overhead and at night while at rest. (Id.) An examination again showed limited range of motion in all planes with positive Hawkins and Neer's. (Id.) She was diagnosed with recurrent adhesive capsulitis, rotator cuff tendinopathy, (id.), and underwent a second intra-articular corticosteroid injection in May 2024. (Tr. 862).

During this period, Nellis also underwent a consultative examination with Dr. Ahmed Kneifati on January 24, 2024. (Tr. 829-33). Dr. Kneifati noted limited motion of the right shoulder due to rotator cuff tear and adhesive capsulitis with stiffness and pain. (Tr. 830, 832). His examination notes revealed Nellis' range of motion of her right shoulder was limited in all planes including forward elevation, abduction, adduction, internal rotation, and external rotation. (Tr. 840).

Thus, the clinical record consistently reinforced that Nellis had significant pain, stiffness, and limited range of motion in her right shoulder limiting her ability to reach in all directions. This record was reinforced by Nellis' own testimony at the hearing, when she stated she cannot reach overhead at all with her right shoulder, that her shoulder gets "stuck" if she moves it in the wrong direction, and that she has difficulties reaching straight ahead or above chest level. (Tr. 46).

6

This clinical evidence, and Nellis' account of her impairments, led both medical sources who opined on her physical abilities to conclude that her ability to reach was compromised. However, these experts reached different conclusions on the extent of this limitation. On this score, on January 24, 2024, the physician who examined Nellis, Dr. Kneifati, opined that Nellis could never reach overhead and could only occasionally reach in all other directions with her right hand. (Tr. 836). This opinion was consistent with Dr. Kneifati's examination findings and the clinical findings in the record that Nellis had reduced range of motion in her right arm in all planes and with Nellis' testimony that she could never reach overhead.

On February 27, 2024, a non-examining State agency medical consultant Dr. Josie Mae Henderson also concluded Nellis would be limited in reaching with her right hand and concluded she would only be limited to occasionally reaching overhead with her right upper extremity due to shoulder pain and decreased range of motion but would be unlimited in her ability to reach in front and/or laterally. (Tr. 75). Yet this non-examining source opinion could not be readily reconciled with the clinical evidence when it came to consideration of Nellis' inability to reach with her right extremity and was unexplained with regard to the limitations in reaching. Indeed, while Dr. Henderson acknowledged right shoulder pain and decreased range of motion in the record, she failed to explain why the reduced range of motion would

7

only require limitations in Nellis' ability to reach overhead when examinations clearly showed limitations in all planes. Moreover, Dr. Henderson conceded that the opinion of Dr. Kneifati was "partially supportable and partially consistent" with the clinical evidence yet failed to reconcile Dr. Kneifati's additional limitations in reaching with her much less comprehensive opinion. (Tr. 75-77).

It is against the backdrop of this evidence that the ALJ conducted a hearing in Nellis' case on June 26, 2024. (Tr. 35-59). Nellis and a vocational expert (VE) both testified at this hearing. (Id.) At the hearing, the vocational expert testified that an individual with Nellis' RFC who could never overheard reach with the right hand could still perform the jobs he identified. However, the VE testified that if a person could only reach occasionally with their dominant right hand in all other planes, that individual would be unable to perform any jobs at the light exertional level. (Id.) Thus, the issue of whether Nellis could reach overhead would not have changed her ability to perform work at the light exertional level, but the question of whether Nellis could reach in all other planes was outcome determinative.

Following this hearing, on June 28, 2024, the ALJ issued a decision denying Nellis' application for benefits. (Tr. 7-25). In that decision, the ALJ first concluded Nellis met the insured requirements of the Act through September 30, 2027, and had not engaged in substantial gainful activity since September 7, 2021, the alleged onset

8

date of her disability. (Tr. 12-13). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Nellis had the following severe impairments: adhesive capsulitis, May-Thurner syndrome, deep vein thrombosis, and diabetic peripheral neuropathy. (Tr. 13). At Step 3 the ALJ determined that none of these impairments met or medically equaled the severity of any of the listed impairments. (Tr. 14-15).

Between Steps 3 and 4 the ALJ concluded that Nellis retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can stand/walk for only 4 hours during an 8-hour workday; can only occasionally perform postural movements; can occasionally reach overhead with her right upper extremity; and must avoid concentrated exposure to loud noise, vibrations, dangerous machinery, and unprotected heights.

(Tr. 15).

Notably, this RFC provided that Nellis could only occasionally reach overhead with her right upper extremity, but made no provision for Nellis' limited range of motion in other planes, a physical limitation that was fully supported by the clinical evidence, the statements of Nellis, and Dr. Kneifati. Curiously, in reaching this conclusion, the ALJ acknowledged the evidence clinical evidence which showed Nellis had limited range of motion in her shoulder in all directions, explaining:

> In May 2023, the claimant presented to the emergency department with complaints of right shoulder pain, present since January 2023 (Exhibit B12F, page 92). On physical examination, her right shoulder was shown to have painful range of motion above 90 degrees *in all planes* and her strength was decreased when compared to her left upper extremity (Exhibit B12F, page 93). The claimant was referred to orthopedics (Exhibit B12F, page 93) and physical therapy (Exhibit B13F). The claimant was diagnosed with adhesive capsulitis of her right shoulder (Exhibit B16F, page 12) and was administered an intra-articular corticosteroid injection in June 2023 (Exhibit B16F, page 10). In April 2024, the claimant returned to orthopedics reporting that while her injection provided significant relief of her symptoms initially, her symptoms of shoulder pain recurred the prior month (Exhibit B18F, page 10). On physical examination, the claimant presented with diminished strength, limited range of motion, and positive Hawkins and Neer's testing (Exhibit B18F, page 10). The claimant was provided another injection in May 2024 (Exhibit B18F, page 18) (Tr. 17)

(Tr. 17). Thus, the ALJ acknowledged that Nellis' adhesive capsulitis was a severe condition that limited her range of motion in all planes, yet failed to explain why this record supported only limitations to occasional reaching overhead but no limitation reaching any other direction. The ALJ also acknowledged the examination findings of Dr. Kneifati, but concluded that:

> However, the claimant showed no evidence of lower extremity edema, impaired upper or lower extremity strength, diminished hand or finger dexterity, or sensory deficit. . . . These observations suggest the claimant retains a greater capacity for sustained functional activities than opined in her disability application and appeal and further support the above assessment of the claimant's residual functional capacity.

10

(Id.) In support of the RFC, the ALJ seemingly explained that no further limitations were necessary due to intact strength and sensation in Nellis' extremities, examination findings which have no bearing on her ability to reach in all directions.

The ALJ then found the opinion of Dr. Henderson persuasive, stating that her opinion that Nellis should be limited to no more than occasional overhead reaching was well-supported by physical examination records throughout the file showing Nellis "retains a good capacity for sustained strength and ambulation . . . despite limited right shoulder range of motion." (Tr. 17-18). The ALJ did not explain why the examination records showing limited range of motion only affected Nellis' ability to reach overhead. The ALJ then found the opinion of consultative examiner Dr. Kneifati unpersuasive, but in finding Dr. Kneifati's opinion inconsistent with his observations and poorly supported by medical treatment records, the ALJ addressed only Nellis' abilities with regard to her lower extremities and did not directly address Dr. Kneifati's opinion that she could only occasionally reach in all directions.

The ALJ then found at Step 4 that Nellis could not perform her past work as a retail store manager but concluded at Step 5 that jobs existed in significant numbers in the national economy that she could perform despite her impairments. (Tr. 19). Notably, these were the jobs the VE testified at the hearing she would not be able to perform if she were limited to only occasional reaching in all directions. (Tr. 56).

11

Having reached these conclusions, the ALJ determined that Nellis had not met the demanding showing necessary to sustain her claim for benefits and denied her claim. (Tr. 19-20).

This appeal followed. (Doc. 1). On appeal, Nellis challenges the adequacy of the ALJ's RFC determination on multiple scores and specifically asserts that the ALJ erred in assessing her right shoulder limitations. This case is fully briefed and is, therefore, ripe for resolution. As discussed in greater detail below, we find that the ALJ's failure to adequately explain the decision to limit Nellis to occasional overhead reaching but no provide no limitations in reaching all other directions warrants a remand of this case given the evidence which revealed that her right shoulder range of motion was severely limited in all planes. Accordingly, we recommend that this decision be remanded for further consideration by the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200

(3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-

13

evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether Swanger is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

14

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that

15

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.     Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant

16

is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and RFC. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's RFC. The RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and

recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's [RFC] without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F.Supp.2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances,

18

it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony

19

regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns, 312 F.3d 113; see also Rathbun, 2018 WL 1514383, at *6; Metzger, 2017 WL 1483328, at *5.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis

20

for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

This principle applies with particular force to a claimant's limitations in terms of reaching and reaching overhead. Therefore, when an ALJ fashions an RFC which does not fully account for and address reaching restrictions, a remand is often necessary. See Swanger v. O'Malley, No. 3:23-CV-1730, 2024 WL 4343550, at *1 (M.D. Pa. Sept. 5, 2024), report and recommendation adopted, No. 3:23-CV-01730, 2024 WL 4339996 (M.D. Pa. Sept. 27, 2024); Stockett v. Comm'r of Soc. Sec., 216 F. Supp. 3d 440, 461 (D.N.J. 2016); Gamret v. Colvin, 994 F. Supp. 2d 695, 699 (W.D. Pa. 2014).

## C.   This Case Should be Remanded for Further Consideration by the Commissioner.

As we have noted, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433. This cardinal principle applies with particular force to several types of assessment made by ALJs. With respect to the instant case, it is well settled that "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001).

21

Therefore, an ALJ must "explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000).

In the instant case, we conclude that the ALJ's RFC determination is not supported by an adequate explanation with respect to Nellis' reaching restrictions. As we have noted, the clinical evidence reveals that Nellis' examinations starting in early 2023, when she was first diagnosed with adhesive capsulitis, repeatedly noted that this condition significantly limited the range of motion in her right shoulder in all planes. (Tr. 716, 768, 855, 862). This clinical evidence was reinforced by the examination of Dr. Kneifati, which showed Nellis' right shoulder range of motion was limited in all planes including forward elevation, abduction, adduction, internal rotation, and external rotation. (Tr. 840). Nellis herself also testified that she could not overhead reach at all with her right shoulder and had difficulties reaching straight ahead or above chest level. (Tr. 46).

Further, Dr. Kneifati, who examined the plaintiff, opined that her ability to reach was significantly compromised in that she could never reach overheard with her right arm and could only occasionally reach in all other directions. It was only the unexplained opinion of the non-treating source, Dr. Henderson, which supported the RFC crafted by the ALJ. Yet, Dr. Henderson's opinion similarly credited the

22

record showing Nellis suffered limited range of motion in all planes in her right arm, yet inexplicably concluded she could only occasionally reach overhead but had no limitations in reaching in any other direction.

Against this body of evidence which unequivocally shows Nellis was limited in her ability to reach not just overhead but in all directions, the ALJ fashioned an RFC that mirrored that of the non-examining source who had concluded only that Nellis should be limited to occasional overhead reaching but made no other accommodations for her limited range of motion. This went entirely unexplained in the ALJ's decision, which seemed to credit the records showing Nellis' adhesive capsulitis was a severe condition that limited her range of motion in all planes, yet failed to explain why this record supported only limitations to occasional reaching overhead but no limitation reaching any other direction and citing to intact strength and sensation in Nellis' extremities, examination findings which have no bearing on her ability to reach in all directions.[3]

---

[3] The Commissioner argues that the DOT does not distinguish between reaching overheard and reaching in all other directions, thus the ALJ was justified in relying on the VE testimony that she could perform the identified jobs even if limited to overhead reaching. See Tammero v. Saul, No. 3:19-CV-02234, 2020 WL 7480661, at *9 (M.D. Pa. Dec. 18, 2020) (explaining that the DOT is silent on overhead reaching and an ALJ may rely on a VE's expertise concerning specific limitations to which h the DOT is silent). In our view, this argument only furthers our conclusion

Further, the ALJ's rejection of Dr. Kneifati's opinion that she could never reach overhead and could only occasionally reach in all other directions made no mention of these limitations and why they were unpersuasive, focusing only on Dr. Kneifati's opinion on her abilities with regard to her lower extremities. Instead, the ALJ seemingly adopted the upper extremity limitations opined by the non-examining source, Dr. Henderson, who also failed to explain how the clinical record supported limitations in some planes of reaching but not others.

On these facts, the failure to address or analyze all aspects of Nellis' right arm reach limitations was error. Moreover, given the testimony of the vocational expert that limitations to occasional reaching in all directions would preclude Nellis from working any occupation at the light exertional level, this unexplained failure by the ALJ to include any limitations in reaching in all directions, despite the evidence showing Nellis had significant limitations in her range of motion in all planes, was a prejudicial error. Indeed, in this context where an ALJ's incorporation of these

---

that more explanation was necessary on the part of the ALJ since, while the DOT does not distinguish between the ability to reach overhead and reach in all other directions, the ALJ clearly and intentionally did so here without explanation. This was significant and required explanation where the VE testimony upon which the ALJ was empowered to rely clearly showed that, had the ALJ limited Nellis to occasional reaching in all directions she would not have been able to perform these jobs.

24

limitations would have resulted in a decision finding the plaintiff disabled, it was incumbent upon the ALJ to provide an adequate explanation as to why the record supported limitations in one area of reaching but not others.[4]

Given this constellation of factors, the ALJ's failure to explain why further limitations on Nellis' ability to reach were not incorporated into this RFC was in error. In our view, more is needed here given this disparity between the RFC and the evidence. Thus, we conclude that the ALJ's decision in this case is not supported by substantial evidence, as the ALJ did not offer an adequate explanation for concluding Nellis was limited in reaching in some directions but not others. Accordingly, we will remand this case to the Commissioner for further consideration of this evidence. Yet, while we find that these errors compel a remand in this case, nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Instead, that judgment should remain to province of the ALJ. Finally, because we have vacated and remanded the decision of the Commissioner on these grounds, we decline to address any other issues presented by the parties since "[a] remand may produce

---

[4] We are also without explanation as to why, despite the examination findings and Nellis' own testimony that she could never reach over her head, the ALJ concluded she could reach overhead occasionally. However, this issue is not outcome determinative since the VE testified that she could still perform the jobs identified even if she was limited to no overhead reaching.

25

different results on these claims, making discussion of them moot." <u>Burns v. Colvin</u>,

156 F.Supp.3d 579, 598 (M.D. Pa. Jan. 13, 2016).

## IV.  <u>Conclusion</u>

Accordingly, for the foregoing reasons, the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

<u>*s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: March 19, 2026